**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

MIGUEL ASMAR,

               Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

               Defendant.

Case No.: 16-cv-01079-GPC-MDD

**REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

[ECF NOS. 20, 21]

Plaintiff Miguel Asmar ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's applications for a period of disability and disability insurance benefits under Title II and supplement security income payments under Title XVI of the Social Security Act. Plaintiff moves the Court for summary judgment reversing the Commissioner and ordering an award of benefits, or in the alternative, to remand the case for further

administrative proceedings.  (ECF No. 19).  Defendant moves for summary judgment affirming the denial of benefits.  (ECF No. 20).

For the reasons expressed herein, the Court recommends that Plaintiff's motion be **DENIED** and Defendant's motion be **GRANTED**.

# I. BACKGROUND

A.   Factual Background

Plaintiff alleges that he became disabled on December 31, 2008, due to several medical and mental conditions, including pain in his right foot and knee, both ankles, right elbow, and jaw; numbness in both hands and his back; pain and arthritis in his neck; wrist damage; loss of concentration; anxiety; and depression.  (A.R. at 11, 168).[1] Plaintiff's date of birth, June 27, 1974, categorizes him as a younger individual at the time of filing.  20 C.F.R. §§ 404.1563, 416.963; (A.R. 216).

B.   Procedural History

On February 29, 2012, Plaintiff filed an application for supplemental security income under Title XVI of the Social Security Act ("Act"), and on March 14, 2012, Plaintiff filed an application for disability insurance benefits under Title II of the Act.  (A.R. 11). Plaintiff has filed four prior applications.  (A.R. 16).  The third application was filed on August 20, 2009, and denied by Administrative Law Judge ("ALJ") J. Carletti on December 27, 2010[2].  (*Id.,* A.R. 102).

_____

[1] "A.R." refers to the Administrative Record filed on August 4, 2016, and is located at ECF No. 11.

[2] The current ALJ reported December 17, 2010 as the date of the prior ALJ decision, but the correct date is December 27, 2010.  (*Compare* A.R.

2

The Appeal's Council denied review of the ALJ's decision on January 4, 2011. (A.R. 16). As to Plaintiff's 2012 applications, his claims were denied initially on October 19, 2012, and denied upon reconsideration on April 17, 2013. (A.R. 11). Plaintiff requested a hearing before an ALJ, and a hearing was held on June 5, 2014, before ALJ Eric V. Benham. (A.R. 29-48). Plaintiff appeared and was represented by counsel. (A.R. 29). Plaintiff and Vocational Expert ("VE") Mark Remas testified at the hearing. (A.R. 32-47).

On September 18, 2014, the ALJ issued a written decision finding Plaintiff not disabled. (A.R. 11-21). Plaintiff appealed, and the Appeals Council denied Plaintiff's request to review the ALJ's decision. (A.R. 1-3). Consequently, the ALJ's decision became the final decision of the Commissioner. (A.R. 1).

On May 3, 2016, Plaintiff filed a Complaint with this Court seeking judicial review of the Commissioner's decision. (ECF No. 1). On August 4, 2016, Defendant answered and lodged the administrative record with the Court. (ECF Nos. 10, 11). On October 18, 2016, Plaintiff moved for summary judgment. (ECF No. 20). On November 18, 2016, the Commissioner cross-moved for summary judgment and responded in opposition to Plaintiff's motion. (ECF Nos. 20, 21).

---

16, *with* A.R. 102). In any event, the ALJ's typographical error is inconsequential.

## II. DISCUSSION

A.  Legal Standard

The supplemental security income program provides benefits to disabled persons without substantial resources and little income.  42 U.S.C. § 1382.  To qualify, a claimant must establish an inability to engage in "substantial gainful activity" because of a "medically determinable physical or mental impairment" that "has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  The disabling impairment must be so severe that, considering age, education and work experience, the claimant cannot engage in any kind of substantial gainful work that exists in the national economy.  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner makes this assessment through a process of up to five steps.  First, the claimant must not be engaged in substantial, gainful activity.  20 C.F.R. § 416.920(b).  Second, the claimant must have a "severe" impairment.  20 C.F.R. § 416.920(c).  Third, the medical evidence of the claimant's impairment is compared to a list of impairments that are presumed severe enough to preclude work.  20 C.F.R. § 416.920(d).  If the claimant's impairment meets or is equivalent to the requirements for one of the listed impairments, benefits are awarded.  *Id.*  If the claimant's impairment does not meet or is not equivalent to the requirements of a listed impairment, the analysis continues to a fourth and possibly fifth step and considers the claimant's residual functional capacity.  20 C.F.R. § 416.920(e).  At the fourth step, the claimant's relevant work history is considered along

4

with the claimant's residual functional capacity. *Id.* If the claimant can perform the claimant's past relevant work, benefits are denied. 20 C.F.R. § 416.920(f). At the fifth step, if the claimant is found not able to perform the claimant's past relevant work, the issue is whether claimant can perform any other work that exists in the national economy, considering the claimant's age, education, work experience, and residual functional capacity. 20 C.F.R. § 416.920(g). If the claimant cannot do other work that exists in the national economy, benefits are awarded. *Id.*

Section 1383(c)(3) of the Social Security Act, through Section 405(g) of the Act, allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. §§ 1383(c)(3), 405(g). The scope of judicial review is limited, and the Commissioner's denial of benefits "will be disturbed only if it is not supported by substantial evidence or is based on legal error." *Brawner v. Secretary of Health & Human Services*, 839 F.2d 432, 433 (9th Cir. 1988) (quoting *Green v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986)).

Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala* 53 F.3d 1035, 1039 (9th Cir. 1995)). The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. *Desrosiers v. Secretary of Health & Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). If the evidence

5

supports more than one rational interpretation, the court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). When the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

The ALJ has a special duty in social security cases to fully and fairly develop the record in order to make an informed decision on a claimant's entitlement to disability benefits. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). Because disability hearings are not adversarial in nature, the ALJ must "inform himself about the facts relevant to his decision," even if the claimant is represented by counsel. *Id.* (quoting *Heckler v. Campbell*, 461 U.S. 458, 471 n.1 (1983)).

Even if a reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978). Section 405(g) permits a court to enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration for further proceedings. *Id.*

B.    The ALJ's Decision

The ALJ concluded Plaintiff was not disabled, as defined in the Social Security Act, from December 31, 2008, through the date of the ALJ's decision, September 18, 2014. (A.R. 20-21). The ALJ found that Plaintiff did not make a showing of changed circumstances sufficient to

overcome the presumption of non-disability from the prior ALJ decision in December 2010. (A.R. 16).

The ALJ found that Plaintiff has the following severe impairments: history of testicular cancer status post right orchiectomy without recurrence, cervical spine degenerative disc disease, right hand osteoarthritis, right wrist pain and right knee degenerative changes. (A.R. 13). The ALJ determined that Plaintiff's depression is not severe. (A.R. 13-14). Specifically, the ALJ found that Plaintiff has mild restrictions in daily living activities, social functioning and concentration, persistence or pace. (A.R. 14). The ALJ also determined that Plaintiff experienced no episodes of decompensation of extended duration. (*Id.*). The ALJ noted that Plaintiff was able to drive a car, attend school, ride a motorcycle, ride a bike, care for his daughter and engage in outdoor activities with her and was a jeweler for a hobby. (*Id.*).

The ALJ further found that Plaintiff did not have an impairment or combination thereof that meets or is medically equivalent to the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926) because "[n]o physician has credibly opined that the [Plaintiff's] conditions meet or equal any listing, and the state agency program physicians opined that they do not." (A.R. 15).

Moreover, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to "perform the full range of heavy work as defined in 20 CFR [§§] 404.1567(d) and 416.967(d)" with no mental limitations.

7

(A.R. 15, 18). In making this finding, the ALJ noted that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms "are not entirely credible" and the objective medical evidence does not support Plaintiff's alleged symptoms. (A.R. 16). Based on the VE's testimony, the ALJ found that Plaintiff is capable of performing past relevant work as a newspaper deliverer and auto service supervisor because his RFC permits him to perform these jobs as they are generally performed. (A.R. 20). The ALJ specifically noted the following to be of particular relevance:

1. Plaintiff's Testimony

Plaintiff alleged that since December 31, 2008, pain in his neck, arm, hand, wrist and knee limits his abilities to perform postural and manipulative movements such as sitting, standing, walking and lifting and carrying. (A.R. 16). He alleged that his disability is due to mental and physical injuries. (*Id.*). The ALJ, however, found that Plaintiff's allegations concerning the intensity, persistence and limiting effects of his symptoms were "not entirely credible". (*Id.*). Specifically, the ALJ found that Plaintiff's allegations of disabling mental and physical limitations are unsupported by objective medical evidence. (*Id.*).

Plaintiff was diagnosed with and treated for testicular cancer in 2006, completed chemotherapy by January 2, 2007 and was able to resume full-time work delivering newspapers and performing manual labor. (A.R. 16-17). The ALJ noted that Plaintiff does not allege current impairment due to cancer and no evidence of cancer recurrence exists. (A.R. 17).

8

Plaintiff alleged three motor vehicle accidents in 2008 and another in 2011. (*Id.*). The ALJ incorporated by reference the prior ALJ's 2010 decision and stated that Plaintiff's "exaggeration of the severity of these accidents and the lack of objective evidence of injury impair the [Plaintiff's] credibility." (*Id.*). Particularly, the ALJ noted that after Plaintiff's December 20, 2008 motorcycle accident, he complained of bilateral knee, wrist and left thumb pain, but radiographs of Plaintiff's pelvis and bilateral knees were negative. (*Id.*). The ALJ also acknowledged that Plaintiff was discharged from the emergency department with no prescriptions and was walking appropriately. (*Id.*).

With respect to Plaintiff's October 4, 2011 motorcycle accident, the ALJ noted that on October 10, 2011, Plaintiff was not taking any medications, and that in a November 2011 neurologic exam, Plaintiff "walked with a limp but was nonetheless able to toe, heel and tandem walk" and showed no evidence of focal weakness or atrophy of the upper or lower extremities, except for his right thumb muscles. (A.R. 17). On May 21, 2012, Plaintiff complained of foot pain, but his radiographs were normal, except for hallux valgus. (*Id.*). The ALJ noted that Plaintiff's behavior during his July 2, 2012 appointment "indicated no credible concern for a foot injury." (*Id.*).

On February 11, 2013, Plaintiff reported that he was not taking any medications, and his doctor deemed him fully functional and independent. (A.R. 17). On March 11, 2013, Plaintiff demonstrated attentiveness, intact comprehension, good memory, normal muscle bulk

16-cv-01079-GPC-MDD

and tone, full motor strength in his upper and lower extremities and an antalgic gait with difficulty bearing weight on his left foot. (*Id.*).

In July 2013, Plaintiff alleged that he fell in his shower due to weakness in his right knee. (*Id.*). Plaintiff's July 2013 exam revealed no cervical spine tenderness and no acute cervical spine injury. (*Id.*). The ALJ noted that although a November 2010 MRI showed evidence of some degenerative changes to Plaintiff's right knee's medial meniscus, a later November 2013 examination revealed no tear and his right knee exam results were normal. (A.R. 18). The ALJ also mentioned that on March 17, 2014, Plaintiff demonstrated five-out-of-five muscle strength of his quadriceps. (*Id.*). Moreover, the ALJ found that Plaintiff's continued bike riding suggests "retained function, strength and mobility of his lower extremities." (*Id.*).

In addition, the ALJ noted that Plaintiff's description of his daily activities contradicts his allegations of disabling symptoms and limitations. (*Id.*). The ALJ specified that Plaintiff "drove a car, went to school, rode a motorcycle, rode a bike, was a jeweler for a hobby, cared [for] his young daughter [by] taking her to school and engaged in outdoor activities with her." (*Id.*). Although Plaintiff alleged that he requires a cane to assist his ambulation, the ALJ noted that a doctor did not prescribe a cane, Plaintiff did not consistently bring his cane to his doctor appointments and Plaintiff's cane did not appear as worn as it should be. (A.R. 18-19).

Furthermore, the ALJ pointed to Plaintiff's concession that his doctors did not believe his condition to be permanently disabling,

16-cv-01079-GPC-MDD

inconsistent statements about his depression and lack of motivation to obtain gainful employment during periods of no alleged limitations to support his finding that Plaintiff's allegations are not credible and unsupported by objective medical evidence (A.R. 19).

2. Third Party Function Report

On July 29, 2012, Michelle A. Lopez, Plaintiff's friend, submitted a third party function report. (A.R. 19, 267-75). Ms. Lopez reported that Plaintiff cares for his daughter, engages in outdoor activities with her, cares for two puppies, shops in stores, drives a car and regularly attends church. (A.R. 19). The ALJ gave little weight to Ms. Lopez's description of Plaintiff's debilitation because they are based primarily on what Plaintiff reported and displayed to her. (*Id.*). The ALJ also found Ms. Lopez's description of Plaintiff's disability inconsistent with her description of Plaintiff's daily activities. (*Id.*).

3. Joseph Watson, D.O.

Treating physician, J. Watson, D.O., opined that Plaintiff is unable to care for his daughter and that his motorcycle accident injuries interfere with his attention and concentration, require him to lie down during the day, limit him to sitting and standing for only two to three hours, require him to take unscheduled breaks, limit his carrying capacity to ten pounds and cause significant manipulative limitations. (A.R. 19-20, 521-29). The ALJ afforded little weight to Dr. Watson's opinion because his progress notes contain few objective findings and appear to be primarily based on Plaintiff's subjective reports. (A.R. 20). The ALJ further noted that Dr. Watson's opinions were inconsistent

11

with the objective medical record, which indicates that Plaintiff maintained his daily activities, retained good strength and mobility and had no significant mental deficits. (*Id.*).

4. Mental Health Examinations

On March 25, 2013, consultative examiner, G. Nicholson, M.D., performed a comprehensive psychiatric evaluation on Plaintiff. (A.R. 14, 485-91). Dr. Nicholson reported that Plaintiff made good eye contact, exhibited good social skills, was cooperative, had coherent and organized thoughts, was alert and oriented, exhibited recollection and ability to spell and had intact insight and judgment. (A.R. 14-15). Dr. Nicholson found that Plaintiff had no mental health diagnosis and no functional limitations. (A.R. 15).

Additionally, the State Agency's Psychological Consultant, T. Schumacher, Ph.D., opined that Plaintiff had no severe mental impairment. (*Id.*). The ALJ afforded substantial weight to both doctors' opinions because Dr. Nicholson examined Plaintiff and Dr. Schumacher reviewed Dr. Nicholson's reports and other record evidence. (*Id.*). The ALJ further noted that both doctors' opinions were consistent with and corroborate each other. (*Id.*).

5. State Agency Medical Consultant

State Agency Medical Consultant, D. Subin, M.D., opined that Plaintiff "retains the capacity to perform medium exertion work with frequent performance of postural movements." (A.R. 19, 132-44). The ALJ accorded some weight to Dr. Subin's opinion. (A.R. 19). Although the ALJ agreed that Plaintiff's physical impairments do not prevent

him from performing all work activity, the ALJ did not adopt Dr. Subin's opinion that Plaintiff is limited to medium exertion work. (*Id.*). Instead, the ALJ found that based on other evidence demonstrating Plaintiff's strength, mobility, mental fitness and daily activities, Plaintiff has retained capacity for heavy exertion work without postural limitations. (*Id.*).

6. Robert J. MacArthur, M.D.

On March 23, 2013, consultative examiner, R. MacArthur, M.D., performed an orthopedic evaluation on Plaintiff. (A.R. 18, 476-82). The physical exam showed that Plaintiff (1) had no atrophy of any muscle group, (2) walked with normal posture, (3) had no difficulty rising on his toes and heels, (4) did not have an antalgic gait, (5) had normal range of motion and full motor strength in his upper and lower extremities, (6) had full range of motion in his neck and back, (7) retained full range of motion of all of his fingers, (8) had normal exam results for his feet, (9) had normal sensations and reflexes and (10) had normal exam results for his cervical and lumbar spine, as well as his right knee. (A.R. 18).

Dr. MacArthur diagnosed Plaintiff with right hand moderate osteoarthritis, right foot mild scarring of the medial arch status post injection and debridement with no findings of loss of motion. (*Id.*). The ALJ afforded substantial weight to Dr. MacArthur's opinions, given that Dr. MacArthur had the opportunity to personally examine Plaintiff and review his diagnostic imaging, is board certified in orthopedics and familiar with Social Security rules and regulations. (*Id.*). The ALJ

16-cv-01079-GPC-MDD

further found that Dr. MacArthur's findings are supported by objective medical evidence. (*Id.*).

      7. Vocational Expert

At Plaintiff's July 15, 2014 hearing, VE Mark Remas testified that Plaintiff's past relevant work in newspaper delivery is classified as unskilled and light exertion, and his work in lubrication service is classified as semi-skilled and medium work. (A.R. 20, 44-47). The ALJ found that Plaintiff is able to perform the physical and mental demands associated with his past relevant work as a newspaper deliverer and an auto service supervisor because his RFC allows for a full range of heavy exertion work. (A.R. 20).

C.    <u>Issues on Appeal</u>

      1. Effect of the Prior ALJ's Decision

          a. *Res Judicata* Presumption of Non-Disability

As noted by the Defendant, the ALJ's decision clearly states, "the presumption of non-disability is **not** rebutted." (A.R. 16) (emphasis added). A review of the record shows Plaintiff erred in claiming that "[t]he ALJ found the continuing presumption of non-disability rebutted". (*Compare* A.R. 16, *with* ECF No. 20-1 at 8). Plaintiff does not specifically argue any changed circumstances to overcome the presumption of non-disability. (*See* ECF No. 20-1 at 7-8). Defendant maintains that the current ALJ is bound by the prior ALJ's finding of non-disability because Plaintiff failed to establish changed circumstances to rebut the presumption of non-disability. (ECF No. 21-1 at 5). For the sake of thoroughness, the Court will nonetheless

14

evaluate whether Plaintiff has rebutted the presumption of non-disability since the December 27, 2010 ALJ decision.

The Ninth Circuit acknowledged that "[t]he principles of *res judicata* apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings." *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988) (italics added). With respect to social security claims involving the same parties, facts and issues as a prior claim, a presumption of non-disability arises if an ALJ found the claimant not disabled in a prior final decision. Acquiescence Ruling 97-4(9)[3] *accord Chavez,* 844 F.2d at 693.

To overcome the presumption of continuing non-disability, the claimant "must prove 'changed circumstances' indicating a greater disability." *Chavez,* 844 F.2d at 693 (citing *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985)). Changed circumstances include a change in the claimant's age category, an increase in the severity of the claimant's impairments, existence of new impairments not previously considered or a change in the criteria for determining disability. Acquiescence Ruling 97-4(9). Moreover, a prior ALJ's findings concerning the claimant's RFC, education and work experience are afforded some *res judicata* consideration and will not be disturbed in a subsequent

---

[3] Acquiescense Rulings "are binding on all components of the Social Security Administration," except under specified circumstances, and accorded deference by a reviewing court. 20 C.F.R. § 402.35(b)(2).

disability claim, absent new and material evidence related to such

finding.  *See Chavez,* 844 F.2d at 694; Acquiescence Ruling 97-4(9).

As noted earlier, Plaintiff does not specifically argue the existence of changed circumstances and consequently provided no evidence in support thereof.  (*See* ECF No. 20-1 at 7-8).  Defendant maintains that, notwithstanding the current ALJ's additional findings of severe impairments of cervical spine degenerative disc disease, right hand osteoarthritis, right wrist pain and right knee degenerative changes, Plaintiff did not establish changed circumstances indicating greater disability because objective evidence demonstrated negative or at most mild findings and no indication of disability with respect to these impairments.  (ECF No. 21-1 at 5-6).

In 2010, ALJ Carletti found that Plaintiff was not disabled, as defined in the Act, from October 28, 2008 through December 27, 2010, the date of his decision.  (A.R. 101).  ALJ Carletti determined that Plaintiff had the following severe impairments: (1) status-post testicular cancer and (2) a depressive order.  (A.R. 96).  The ALJ found that Plaintiff had the RFC "capacity to perform the full range of light work".  (A.R. 97).  In support of his findings, ALJ Carletti specifically noted Plaintiff's 2006 testicular cancer, three motor vehicle accidents in 2008, depressive disorder diagnosis, complaints of continued pain and objective medical opinions and examination results relating to these events.  (A.R. 97-100).

ALJ Carletti explained that Plaintiff finished cancer treatment in 2007, and no evidence of recurrence was present.  (A.R. 98).  The ALJ

further mentioned that although Plaintiff was involved in a motor vehicle accident in March 2008, a hospital cleared Plaintiff with only benign findings. (A.R. 97, 99). The ALJ noted that on Plaintiff's June 1, 2010 follow-up examination for another 2008 accident, the doctor reported that Plaintiff retained full range of motion of his neck and prescribed physical therapy for him. (A.R. 98). ALJ Carletti also explained that there was no evidence of Plaintiff's current mental status because the therapist had not examined Plaintiff since 2008, and there was no evidence that Plaintiff was receiving mental health services. (A.R. 99-100). As to Plaintiff's complaints of pain in his knees, neck, right hand and right foot, the ALJ noted that his x-ray examination revealed a loss of normal cervical lordosis without compression fracture and mild multilevel degenerative disc disease without subluxation, and the remaining radiographs were grossly normal. (A.R. 100). ALJ Carletti ultimately found that Plaintiff's objective medical record does not establish impairments likely to produce disabling pain or other limitation as alleged for a period of twelve or more months. (*Id.*).

The current ALJ found that, after reviewing Plaintiff's objective medical evidence and opinion evidence, Plaintiff has not established "changed circumstances" to overcome the continuing presumption of non-disability arising from ALJ Carletti's 2010 decision. (A.R. 16). The present ALJ determined that the record evidence did not reflect a more adverse profile than that previously considered by ALJ Carletti. (*Id.*). In an effort to meet his burden, Plaintiff alleged that, since the prior

17

decision, he was involved in an additional motorcycle accident, fell in the shower due to his weak right knee and had worse pain in his neck, back, hand and knee. (A.R.16-18).

On October 4, 2011, Plaintiff was admitted to a hospital due to a third motorcycle accident and complained of pain in his chest, right shoulder, pelvic, thigh and leg. (A.R. 542). However, the radiographs of Plaintiff's right shoulder, wrist, forearm, knee and chest were negative, and he was discharged from the hospital that same day. (A.R. 531-35, 540). Plaintiff's November 2011 radiographs of his right ankle, knee, wrist and hand similarly do not support his claims of disabling pain because these examinations revealed no abnormalities, except for a few cysts in Plaintiff's right knee, dorsal subluxation of the distal radial ulnar joint and bone cyst, diffusely macerated and torn ulnar, some mild edema and ganglion cyst and mild osteoarthritis. (A.R. 322-23, 354-56).

In July 2013, Plaintiff allegedly fell in the shower due to his weak right knee. (A.R. 621). Plaintiff's complaints of his knee locking, popping and causing excruciating pain, however, are inconsistent with his refusal to receive pain medication and the examiner's finding of five-out-of-five muscle strength in Plaintiff's quadriceps on March 17, 2014. (A.R. 633-32). Additionally, Plaintiff's statement that he rides his bike to keep in shape indicates retained function, as well as strength and mobility of his lower extremities. (A.R. 638).

Following the prior ALJ decision, Plaintiff continued to drive his truck, went to school, rode his motorcycle, rode his bike, worked on

jewelry as a hobby, cared for his young daughter, attended church and went to the movie theater, parks and beaches often. (A.R. 41, 339, 485, 545-46, 269-62). Plaintiff's daily activities contradicts his claim that his ability to sit, stand, walk, lift and carry and perform postural and manipulative movements is severely limited. (A.R. 34-39, 41, 43-44). Additionally, objective medical evidence does not support Plaintiff's allegations that the pain in his neck, back, hand and knee have worsened. For example, Plaintiff had a supple neck, no jugular venous distention and no thyromegaly. (A.R. 633). Despite Plaintiff's report of chronic neck pain, a doctor found moderate degenerative disk disease but no significant spinal stenosis and no acute cervical spine injury. (A.R. 705). Further, Plaintiff had only mild arthritis on his right hand, which had no effect on his fingers' full range of motion. (A.R. 480). Plaintiff also had a negative right knee exam. (A.R. 650).

On this record, the Court finds that Plaintiff's impairments have not increased in severity since the prior ALJ decision. The Court, therefore, finds that Plaintiff has not presented any persuasive evidence indicating a greater disability since ALJ Carletti's decision in 2010. *See Chavez*, 844 F.2d at 693. Consequently, Plaintiff has failed to rebut the continuing presumption of non-disability.

### b. The ALJ's Finding of a Less Restrictive RFC

Plaintiff contends that the current ALJ did not properly consider the previous ALJ's decision because he did not point to evidence of medical improvement to support his finding of a greater functional ability than what the prior ALJ found. (ECF No. 20-1 at 7-8).

19

Specifically, Plaintiff argues that the ALJ did not properly consider Plaintiff's previous impairments of testicular cancer and depressive order. (ECF No. 20-1 at 8). Defendant asserts that "the ALJ is not bound to find the same RFC as the previous ALJ decision." (*Id.* at 7).

As indicated earlier, a prior "administrative law judge's findings concerning [a] claimant's [RFC], education, and work experience are entitled to some *res judicata* consideration in subsequent proceedings." *Chavez*, 844 F.2d at 694 (italics added). Accordingly, the Commissioner has instructed that where the ALJ's final decision of non-disability on the prior claim "contained findings on the claimant's [RFC], education, and work experience, [the Social Security Administration] may not make different findings in adjudicating the subsequent disability claim **unless there is new and material evidence relating to the claimant's [RFC]**, education or work experience." Acquiescence Ruling 97-4(9) (emphasis added); *see Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008) (noting that in *Chavez*, 844 F.2d at 694, the Ninth Circuit explained that a previous ALJ's RFC finding can be reconsidered upon "new information not presented to the first judge.").

In the present decision, the ALJ adopted a less restrictive RFC for Plaintiff than the one adopted by ALJ Carletti in 2010. (A.R. 16). ALJ Carletti found that Plaintiff had the RFC for light work. (*Id.*). The current ALJ found that Plaintiff had the RFC for heavy work. (*Id.*). Here, the ALJ explained that "evidence supports greater functional ability than previously determined by Judge Carletti." (*Id.*).

First, contrary to Plaintiff's assertions, the present ALJ did consider Plaintiff's history of testicular cancer and depressive order. (*See* A.R. 16, 17, 19). The ALJ cited medical reports indicating that Plaintiff completed cancer treatment in 2007 and that no evidence of cancer recurrence exists (A.R. 692-93, 700). The ALJ also noted that Plaintiff does not allege any impairments related to his cancer. (*See* A.R. 40). As to Plaintiff's depressive disorder, the ALJ noted that during a March 2013 psychiatric examination, Plaintiff reported to Dr. Nicholson that "he has not been feeling depressed" and denied any history of suicidality and symptoms related to psychosis, mania or anxiety disorders. (A.R. 486). Indeed, Dr. Nicholson stated that Plaintiff does not appear to have any psychiatric disorder. (A.R. 489).

Second, the ALJ specifically found that objective record evidence no longer supported Plaintiff's more restrictive RFC from 2010. (A.R. 16). For example, the ALJ noted that at a February 2013 medical check-up, Dr. Millard reported that Plaintiff was "fully functional and independent" and not taking any medications. (A.R. 699). As noted previously, on March 23, 2013, Dr. MacArthur physically examined Plaintiff and opined that Plaintiff demonstrated no difficulty rising on his toes and heels, normal posture, no antalgic gait, normal range of motion and full motor strength in his upper and lower extremities. (A.R. 479-80). Dr. MacArthur further determined that Plaintiff can lift and carry up to 100 pounds, that he can stand and walk without limitations during a normal workday, that he does not need a cane for ambulation assistance, that he can sit, climb, balance, kneel, crawl and

16-cv-01079-GPC-MDD

crouch without restrictions and that he can reach, feel and perform gross and fine manipulation without limitations. (A.R. 481-82). The ALJ also pointed to Plaintiff's own description of his daily activities such as driving his truck, riding his bike to keep in shape, engaging in outdoor activities with his young daughter and caring for her as further evidence that Plaintiff's capacity is not limited to light work. (A.R. 19). The ALJ concluded that based on objective medical evidence, Plaintiff has demonstrated greater functional ability than in 2010 and retains the capacity to perform heavy exertion work with no mental or postural limitations. (*See* A.R. 16-19).

The Court finds that the ALJ did not err in failing to adopt Plaintiff's December 2010 RFC because the ALJ relied on sufficient new and material evidence in the record to support a new RFC finding. Acquiescence Ruling 97-4(9) (instructing that an adjudicator may adopt a different RFC if there is new and material evidence relating to that determination); *see also Stubbs-Danielson*, 539 F.3d at 1173; *Chavez*, 844 F.2d at 694.

### 2. Plaintiff's Need for an Assistive Device

Plaintiff contends that the ALJ improperly rejected the opinions of Dr. Brownell, a treating physician, regarding Plaintiff's need for an assistive device, namely a cane. (ECF No. 20-1 at 9). Plaintiff appears to concede that a cane was not medically necessary until November 2013,[4] when Dr. Brownell reported "gait abnormality with cane

---

[4] "What was true in March 2013 ceased to be true by November 2013." (ECF No. 20-1 at 10).

dependence". (*Id.* at 10).  Plaintiff asserts that the ALJ's failure to consider Plaintiff's need for a cane in assessing his RFC materially affects the disability analysis and constitutes reversible error.  (*Id.*)

Defendant argues that substantial evidence supported the ALJ's RFC finding, which did not include a limitation for an assistive device. (ECF No. 21-1 at 9-10).  Specifically, Defendant asserts that Dr. MacArthur's opinion that Plaintiff has no standing or walking limitations and did not need an assistive device is consistent with several other medical reports stating that Plaintiff does not need an assistive device despite his mild antalgic gait.  (*Id.* at 10-11).  Defendant further contends that Plaintiff's daily activities contradict the need for a cane.  (*Id.* at 12-13).

The Ninth Circuit distinguishes among the opinions of three types of physicians: (1) those who treat the Plaintiff ("treating physicians"); (2) those who examine but do not treat the Plaintiff ("examining physicians"); and (3) those who neither examine nor treat the Plaintiff ("non-examining physicians").  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  As a general rule, more weight is given to the opinions of a treating source than to that of a non-treating physician.  *Id.* (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)).  Likewise, the opinion of an examining physician is typically entitled to greater weight than that of a non-examining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990).

In *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit held:

> If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given. Those factors include the 'length of the treatment relationship and the frequency of examination' by the treating physician; and the 'nature and extent of the treatment relationship' between the patient and the treating physician. Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians.

*Id.* at 631 (internal citations omitted).

Where a non-treating, non-examining physician's opinion contradicts the treating physician's opinion, the ALJ may only reject the treating physician's opinion "if the ALJ gives specific, legitimate reason for doing so that are based on substantial evidence in the record." *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (quoting *Andrews*, 53 F.3d at 1041). "The ALJ may meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Morgan v. Apfel*, 169 F.3d 595, 600-601 (9th Cir. 1999) (citing *Magallanes v. Bowen,* 881 F.2d 747, 750 (9th Cir.1989)). Reports of consultative physicians requested by the Commissioner may serve as substantial evidence. *Andrews*, 53 F.3d at 1041.

Here, there is no medical documentation in the record establishing the need for an assistive device. Although Plaintiff is correct that the record contains references to his use of a cane, those notations are

24

traceable to Plaintiff's own subjective reports[5] and to the examiner's mere observations that Plaintiff presented with an assistive device. Plaintiff would have the Court interpret Dr. Brownell's November 7, 2013 medical observation that Plaintiff is a "39yo male with falls and gait abnormality cane dependent" as establishing the need for a cane, but this statement is neither a prescription for a cane nor medical advice to use a cane. (A.R. 628). It was simply an observation. Nowhere in Dr. Brownell's treatment report does it indicate that a cane is medically necessary. (*See* A.R. 627-29). In addition, on November 13, 2013, Frank B. Hamlett, M.D. examined Plaintiff's right knee images and opined that the results were negative. (A.R. 650 (reporting normal bones, normal soft tissues, normal alignment and position and well-maintained joint spaces)). Notably, Dr. Brownell's most recent treatment report in May 2014 makes no mention of Plaintiff's cane or gait. (*See* A.R. 638-40). It does, however, mention that Plaintiff "rides [his] bike to keep in shape". (*Id.* at 638). Because Dr. Brownell did not make any objective determinations with respect to Plaintiff's need for a cane, there was nothing for the ALJ to reject or discredit. (*See* A.R. 627-29, 638-40).

Instead, the ALJ properly relied on examining physician, Dr. MacArthur, who did make objective determinations regarding Plaintiff's use of and need for a cane. (*See* A.R.476-82). Like Dr. Brownell, Dr.

---

[5] In Plaintiff's Function Report, he indicated that a doctor prescribed a cane in 2001. (A.R. 264). Plaintiff, however, has not presented any medical prescriptions for a cane to support his assertions.

16-cv-01079-GPC-MDD

MacArthur noted that Plaintiff presented with a cane. (A.R. 479). Dr. MacArthur, however, went further and pointed out that the cane shows no wear and was not medically prescribed. (*Id.*). Dr. MacArthur observed Plaintiff get on and off the examination table without assistance, rise on his heels and toes without difficulty and walk steadily without his cane. (*Id.*). In light of his observations, Dr. MacArthur explicitly determined that Plaintiff does not need a cane for ambulating. (*Id.* at 481); *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (noting that an ALJ may rationally rely on specific unambiguous imperatives regarding a claimant's limitations). No medical documentation in the record is expressly contrary. Accordingly, the Court finds that the ALJ did not err in making an RFC finding that does not include a limitation for an assistive device.

3. Plaintiff's Ability to Engage in Manipulative Activity

Plaintiff contends that the ALJ failed to articulate specific and legitimate reasons for rejecting former treating physician, Dr. Watson's September 2011 medical opinion that Plaintiff could engage in manipulative activity with his right hand for only five percent of the day. (ECF No. 20-1 at 11-12). Plaintiff asserts that the record contains ample objective evidence demonstrating Plaintiff's right hand limitations, including Dr. MacArthur's finding of moderate osteoarthritis in Plaintiff's right hand. (*Id.* at 11). Defendant argues that substantial evidence support the ALJ's finding that Dr. Watson's assessment was inconsistent with other evidence in the record. (ECF No 21-1 at 14). Defendant further maintains that although Dr.

26

MacArthur found subluxation in Plaintiff's right hand, Dr. MacArthur ultimately determined that it had no effect on the range of motion of Plaintiff's fingers. (*Id.* at 16).

Here, the ALJ rejected Dr. Watson's opinions regarding Plaintiff's right hand manipulative limitations because they appeared primarily based on Plaintiff's subjective reports and contained few objective findings to support his diagnoses. (A.R. 523-26 (documenting mostly Plaintiff's own descriptions of his pain and limitations)). The ALJ further explained that Dr. Watson's opinion that Plaintiff could not lift more than ten pounds and has significant manipulative limitations is inconsistent with evidence demonstrating Plaintiff's retained strength and mobility and his ability to maintain his daily activities. (A.R. 19-20). Specifically, in February 2013, Plaintiff was found to be "fully functional and independent". (A.R. 699). In March 2013, Plaintiff could "move all extremities", his right hand arthritis or subluxation had "no effect on [the] range of motion of all fingers" and "manipulation [could] be done without limitations." (A.R. 701, 480-82). In July 2013, Plaintiff had full motor strength of all hand muscles, and in May 2014, Plaintiff reported that he "rides [his] bike to keep in shape." (A.R. 705, 638).

Because a review of Dr. Watson's reports reveal that they contain conclusory diagnoses and are largely based on Plaintiff's self-reports, the ALJ properly afforded little weight to Dr. Watson's opinions.[6] The

---

[6] The ALJ found Plaintiff's statements regarding the limiting effects of his medical condition "not entirely credible". (A.R. 16). "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as

27

ALJ's adoption of Dr. MacArthur's opinion that Plaintiff's manipulative ability warrants no restriction constitute substantial evidence. The Court finds such reliance was not error because, as the ALJ pointed out, Dr. MacArthur examined Plaintiff, specializes in orthopedics, is familiar with Social Security rules and regulations and his finding is consistent with objective medical evidence of record. *See* 20 C.F.R. § 404.1527(c)(3)-(6). The Court, therefore, finds that the ALJ offered specific and legitimate reasons for rejecting Dr. Watson's opinion based on substantial evidence. *Jamerson,* 112 F.3d at 1066.

The ALJ clearly relied on the findings of the treatment record and reports cited in the administrative record. The ALJ's findings are consistent with the record as a whole. Section 416.920b of Title 20 of the Code of Federal Regulations states that after reviewing all of the evidence relevant to a claimant's claim, the ALJ makes findings about what the evidence shows. The ALJ is also "responsible for making the determination or decision about whether [a claimant] meet[s] the statutory definition of disability." 20 C.F.R. § 416.927(d)(1). The Court's review of the administrative record revealed no ambiguity or error indicating that the ALJ's decision was based on less than substantial evidence. 42 U.S.C. § 405(g).

Accordingly, the Court finds the ALJ's findings of fact and conclusions of law, including Plaintiff's RFC, is supported by substantial evidence and free of legal error. Additionally, the Court

---

incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)) (internal citations omitted)).

28

finds that there are no changed circumstances warranting a different outcome from the 2010 ALJ decision.

### III.  CONCLUSION

The Court **RECOMMENDS** that Plaintiff's Motion be **DENIED** and that Defendant's Motion be **GRANTED**.  This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).

**IT IS HEREBY ORDERED** that any written objections to this report must be filed with the court and served on all parties no later than **April 24, 2017**.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the court and served on all parties no later than **May 1, 2017**.  The parties are advised that failure to file objections within the specific time may waive the right to raise those objections on appeal of the Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:   April 10, 2017

Hon. Mitchell D. Dembin
United States Magistrate Judge

16-cv-01079-GPC-MDD