UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL ASMAR,<br><br>                                    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                                    Defendant. | Case No.:  16-cv-01079-GPC-MDD<br><br>**ORDER DECLINING TO ADOPT REPORT AND RECOMMENDATION AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**<br><br>**[ECF Nos. 20, 21.]** |

On May 3, 2016, Plaintiff Miguel Asmar ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("Act"). (ECF No. 1.) Plaintiff seeks judicial review of the Commissioner of the Social Security Administration's ("Commissioner's") final decision denying Plaintiff's applications for disability insurance benefits under Title II and supplemental security income under Title XVI of the Act. (*Id.*) A Report and Recommendation ("Report") was filed by United States Magistrate Judge Mitchell D. Dembin recommending that Plaintiff's Motion for

Summary Judgment, (ECF No. 20), be denied and Defendant's Cross-Motion for Summary Judgment, (ECF No. 21), be granted. (ECF No. 26.) After careful consideration of the moving papers, the applicable law, the record, and for the reasons set forth below, the Court **DECLINES TO ADOPT** the Magistrate Judge's Report, **GRANTS** Plaintiff's Motion for Summary Judgment, **DENIES** Defendant's Cross-Motion for Summary Judgment, and **REMANDS** for further administrative proceedings.

## <u>PROCEDURAL BACKGROUND</u>

In total, Plaintiff has filed applications for social security benefits four times. (AR 16.)[1] On August 20, 2009, Plaintiff filed his third round of applications. (*Id.*) On December 27, 2010, Administrative Law Judge ("ALJ") James S. Carletti denied Plaintiff's Title II application for disability insurance benefits as well as his Title XVI application for supplemental security income. (*Id.*; AR[2] 90–93.) Because Plaintiff's appeal to the Appeal's Council was denied on November 8, 2011,[3] Judge Carletti's decision is final. (AR 16.)

More recently, on February 29, 2012, Plaintiff filed a Title XVI application for supplemental security income. (AR 111.) On March 14, 2012, Plaintiff also filed a Title II application for disability insurance benefits. (AR 110.) In both applications, Plaintiff alleges disability beginning December 31, 2008, due to several physical and mental conditions, including pain in his right foot and knee, both ankles, right elbow, and jaw; numbness in both hands and his back; pain and arthritis in his neck; wrist damage; loss of concentration; anxiety; and depression. (AR 168.)

On October 19, 2012, Plaintiff's claims were denied at the initial level. (AR 120.) On April 17, 2013, they were denied on reconsideration. (AR 143, 156.) On July 15, 2014, Plaintiff appeared with counsel and testified before ALJ Eric V. Benham. (AR 29–

---

[1] "AR" refers to the Administrative Record filed on August 4, 2016. (ECF No. 11.)
[2] The current ALJ reported December 17, 2010 as the date of the prior ALJ decision, but the correct date is December 27, 2010. (*Compare* AR 16, *with* AR 102.)
[3] The current ALJ reported that the Appeal's Council denied Plaintiff's appeal on January 4, 2011, but the correct date appears to be November 8, 2011. (*Compare* AR 16, *with* AR 106.)

30, 32–44.)  On September 18, 2014, the ALJ issued a written decision finding that Plaintiff was not disabled as defined under the Act.  (AR 11–21.)  On March 7, 2016, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review of the decision.  (AR 1.)

Plaintiff exhausted the administrative remedies set forth in 42 U.S.C. § 405(g) to invoke the district court's jurisdiction.  Consequently, on May 3, 2016, Plaintiff filed a Complaint with the Court seeking judicial review of the Commissioner's decision.  (ECF No. 1.)  On August 4, 2016, Defendant answered and lodged the administrative record with the Court.  (ECF Nos. 10, 11.)  On October 18, 2016, Plaintiff moved for summary judgment.  (ECF No. 20.)  On November 18, 2016, the Commissioner cross-moved for summary judgment and responded in opposition to Plaintiff's motion.  (ECF Nos. 21, 22.)  Plaintiff did not file an opposition to the Commissioner's Cross-Motion for Summary Judgment.

On April 10, 2017, Magistrate Judge Mitchell D. Dembin issued a Report recommending that Plaintiff's Motion for Summary Judgment be denied and Defendant's Cross-Motion for Summary Judgment be granted.  (Dkt. No. 26.)  No objections to the Report have been filed.

## FACTUAL BACKGROUND

Plaintiff, a current resident of San Diego, California, was born on June 27, 1974, and is 43 years old.  (AR 31, 110.)  As of July 15, 2014, the date of the hearing before ALJ Benham, Plaintiff had studied a year in college.  (AR 29, 32–33.)  Plaintiff held his last relevant job as a newspaper deliverer in 2008.  (AR 33–34.)  Prior to that position, Plaintiff worked as an auto service supervisor or the acting manager of Valvoline Instant Oil Change.  (AR 20, 34.)

Plaintiff claims that he has been disabled since December 31, 2008, due to mental and physical injuries.  (AR 112.)  In 2006, Plaintiff had testicular cancer.  (AR 671.)  On September 12, 2006, he underwent right radical orchiectomy surgery.  (AR 673.)  Plaintiff claims to have been involved in three motor vehicle accidents in 2008.  (AR

3

665.)  On October 4, 2011, Plaintiff was allegedly involved in another motorcycle accident.  (AR 530–31.)  Further, in July 2013, Plaintiff allegedly fell in the shower due to weakness in his right knee.  (AR 621, 703.)  Plaintiff claims that he cannot work due to the following illnesses, injuries, or conditions: "loss of concentration," "right foot puncher and not able to walk has lot pain," "damage to right hand from accident," "wrist damage and arthritis," "pain in right elbow," "numbness in both right and left hands and arms," "arthritis in neck and pain," "pain in mid and lower back," "pain in right knee," "pain in both ankles," "migrains," "left side of jaw hurts when talking," "anxiety," and "depression."  (AR 112–13.)

## I. Relevant Medical Evidence

### A. Plaintiff's Physical Impairments

Plaintiff was involved in a motor vehicle accident on March 14, 2008 (AR 494), a motor vehicle accident on May 27, 2008 (AR 509), and a motorcycle accident on December 20, 2008. (AR 651).  Following the first two accidents, Plaintiff received medical care from treating physician Dr. Joseph Watson, D.O. on June 8, 2008 and August 28, 2008.  (AR 665–70.) According to Dr. Watson's Residual Capacity Questionnaire on September 22, 2011, Dr. Watson found that Plaintiff had impairments that would have functional limitations if Plaintiff were placed in a competitive work situation.  (AR 527.)  Dr. Watson found that Plaintiff could sit for only two to three hours in an eight-hour workday, stand or walk for only two hours in an eight-hour workday, and could lift or carry at most ten pounds.  (AR 527–28).  Dr. Watson further noted that Plaintiff could use his right hand for grasping, turning, and twisting objects and his fingers for fine manipulation for no more than five percent of an eight-hour workday, while he could use his right hand for reaching no more than ten percent of the day.  (AR 527–28.)

On October 4, 2011, Plaintiff was involved in a fourth motorcycle accident.  (AR 530–31.)  That day, Plaintiff was admitted to Sharp Memorial Hospital, complaining of right shoulder, right pelvic, thigh, and leg pain, and was treated by Dr. Edward L. Racek.

(AR 530–31, 542.)  Although Dr. Racek found contusions and multiple small abrasions, Dr. Racek's radiographs of Plaintiff's chest, right forearm, right wrist, right knee, and right shoulder were negative.  (AR 540.)  While Dr. Racek found mild to moderate C5-6 and C6-7 degenerative disc disease, he found "no evidence of acute cervical spinal fracture."  (AR 531.)

On November 1, 2011, at the request of his treating physician Dr. Kristin Brownell, Plaintiff underwent a neurologic consultation by examining physician Dr. Edward B. Friedman.  (AR 545.)  Additionally, from a physical examination of Plaintiff, Dr. Friedman found reduced range of motion of his cervical spine and no evidence of focal weakness, atrophy or fasciculation of the upper or lower extremities except for his right thenar muscle.  (AR 547.)  Dr. Friedman further found that Plaintiff's gait was "abnormal . . . as he limps on his right leg" but that Plaintiff could "toe, heel and tandem walk."  (*Id.*)

On November 9, 2011, treating physician Dr. James R. McClurg conducted an orthopaedic evaluation of Plaintiff.  (AR 366.)  Dr. McClurg prescribed a hinged knee brace with patellar tracking and found that Plaintiff "has overt patellofemoral instability" and "pain to his ankle and knee."  (AR 374–75.)  Dr. McClurg noted in his most recent progress report on May 23, 2012, that Plaintiff is able to walk unaided and uses no devices.  (AR 389.)  The doctor further noted that an x-ray of the right knee and leg demonstrates "well preserved joint spaces, good patellofemoral relationship, no loose bodies, no heterotopic calcifications, [and] no acute fractures."  (AR 390–91.)  At the same time, according to Dr. McClurg's supplementary independent evaluation on June 8, 2012, Plaintiff "has a residual impairment in competing in the open market based on the current injury" and "[knee] surgery should be performed as soon as possible."  (AR 404, 405.)  Upon physical examination, Plaintiff demonstrated a loss of upper and lower extremity motion.  (AR 403.)  Moreover, upon "provocative testing," Plaintiff exhibited "patellar subluxation positive with a highly unstable patella-femoral articulation" and was

"unable to perform a full squat." (AR 402). Dr. McClurg further noted that Plaintiff is felt to have reached the point of maximum medical improvement. (AR 404.)

On March 23, 2013, Plaintiff underwent an orthopaedic consultation at the request of the Department of Social Services. (AR 476.) Examining physician Dr. Robert J. MacArthur conducted a physical examination and found that Plaintiff has "no difficulty in rising on the toes" or "on the heels," "presents with a cane which shows no wear and is not prescribed," and has a gait that is "not antalgic without [a] cane." (AR 479.) Dr. MacArthur also found no evidence of swelling, effusion, erythema, warmth, or deformity in the upper and lower extremities. (*Id.*) The cervical spine and thoracolumbar spine examination showed "no discernible limitation in any plane, including flexion, extension, rotation, and lateral flexion." (AR 479–80.) Dr. MacArthur noted that while the right hand "shows moderate prominence base of second and third metacarpals consistent with either a fracture subluxation or post traumatic arthritis of the CMC joints, second and third," "there is no effect on range of motion of all fingers." (AR 480.) Plaintiff's neurological examination also proved to be unremarkable, as his motor examination "[revealed] essentially normal strength" and his sensory examination was "grossly within normal limits in all cervical and lumbar dermatomes." (*Id.*) Dr. MacArthur further determined that Plaintiff can lift and carry up to 100 pounds occasionally and 50 pounds frequently, can stand and walk without limitations during a normal workday, does not need a medically required hand-held assistive device for ambulation, and can sit, stoop, kneel, crouch, crawl, and balance without restrictions. (AR 481–82.)

Finally, on July 10, 2013, Plaintiff allegedly fell in the shower due to weakness in his right knee. (AR 703, 704.) Following the accident, Plaintiff alleged several symptoms, including a severe headache and neck pain as well as chronic numbness and weakness in the arms. (AR 621.) On July 13, 2013, treating physician Dr. Stacy Boore from UC San Diego Health System conducted a physical exam of Plaintiff and found that he could both move all his extremities and had no weaknesses in them. (AR 703, 704.) Upon the recommendation of Dr. Brownell, Plaintiff also received CT scans of his head and spine through UC San Diego Health System from Dr. Karen Beth Van Hoesen. (AR

366, 704.)  Dr. Van Hoesen found that while Plaintiff's chronic neck pain had been exacerbated, Plaintiff experienced no new fracture or injury.  (AR 705.)

On October 31, 2013, Plaintiff sought Dr. Brownell's treatment through Family Health Centers of San Diego.  (AR 625.)  Dr. Brownell diagnosed Plaintiff with "abnormality of gait," "depressive disorder nec," "derang postmed meniscus," and "disc dis nec/nos-cerv."  (*Id.*)  On July 12, 2013, Dr. Brownell noted that Plaintiff "needs a shower chair #1 and metal cane."  (AR 622–23.)  On November 7, 2013, Dr. Brownell assessed Plaintiff as a 39-year-old male "with falls and gait abnormality cane dependent."  (AR 628.)  Following a MRI and x-ray of Plaintiff's right knee, Dr. Brownell again diagnosed Plaintiff with "derang post med meniscus," noting that Plaintiff's right knee worsened after the fall of July 2013.  (*Id.*)  However, on May 1, 2014, during Plaintiff's check-up with Dr. Brownell, she noted that Plaintiff still rides his bike to keep in shape.  (AR 638.)

On March 17, 2014, Plaintiff again visited Family Health Centers of San Diego but was diagnosed by treating physician Dr. Sally Alassil.  (AR 632–34.)  Like Dr. Brownell, Dr. Alassil diagnosed Plaintiff with derang post med meniscus but noted that Plaintiff had "5/5" strength of his quadriceps.  (AR 633.)  Dr. Alassil noted that while Plaintiff had "tenderness along joint line or on palpation of patella," there was "no swelling or erythema" of Plaintiff's knee.  (*Id.*)  Dr. Alassil also included in her objective findings that Plaintiff had a supple neck, no jugular venous distention, and no thryomegaly.  (*Id.*)

**B. Plaintiff's Mental Impairments**

Plaintiff alleged several mental impairments, including loss of concentration, anxiety, and depression.  (AR 331.)  Plaintiff alleged that he "once saw a 'counselor.'"  (AR 340.)  On March 23, 2012, M. Susan Thickstun, Ph.D., conducted an adult behavioral health assessment of Plaintiff and diagnosed him with adjustment disorder, cannabis dependence, borderline personality disorder, and antisocial personality disorder.  (AR 341.)

On the other hand, on March 25, 2013, during a psychiatric consultative examination with psychiatrist Dr. Gregory M. Nicholson, Plaintiff denied any history of

symptoms related to psychosis, mania, or anxiety disorders as well as any history of psychiatric hospitalizations.  (AR 485, 486.)  On the mental status examination, Plaintiff made good eye contact and interpersonal contact with the interviewer, was cooperative, and had coherent and organized thoughts.  (AR 487.)  Dr. Nicholson found no mental health diagnosis and no functional limitations.  (AR 488–89.)

## II. Vocational Expert Testimony

Vocational expert ("VE") Mark Remas testified that Plaintiff's past work as a newspaper deliverer is "unskilled" and "light work," as described in the Dictionary of Occupational Titles ("DOT").  (AR 44.)[4]  The VE also testified that Plaintiff's past work as a lubrication servicer is "medium work."  (*Id.*)  The ALJ asked the VE four hypothetical questions geared towards exploring various physical and mental restrictions and their effects on Plaintiff's ability to perform his past relevant work.  (AR 45–46.)

In response to the first hypothetical, the VE testified that a person with the following limitations could still work as a newspaper deliverer and lubrication servicer: a person who lifts and carries as much as fifty pounds occasionally and twenty-five pounds frequently; stands and walks six hours in an eight-hour day; sits six hours in an eight-hour day; and is limited to frequent gross and fine manipulation.  (AR 45.)

In response to the second hypothetical, the VE testified that a person with the following limitations could still work as a newspaper deliver, though not a lubrication servicer: a person who can lift and carry only twenty pounds occasionally and ten pounds frequently as well as crawl and climb ropes or ladders only occasionally.  (AR 45–46.)

In response to the third hypothetical, the VE testified that a person with the following limitations could work neither as a newspaper deliverer nor as a lubrication servicer: a person who is right-hand dominant, cannot forcefully grip or torque, and is limited to occasional normal handling and fingering.  (AR 46.)  However, the VE said that a person with those limitations could perform other work, such as an usher, a school

---

[4] The VE also describes Plaintiff's past work as a newspaper deliverer as "semi-skilled" work.  (*Compare* AR 45 *with* AR 44.)  The difference, however, is inconsequential.

8

16-cv-01079-GPC-MDD

bus monitor, and a locker room attendant, which are all characterized as light, unskilled labor.  (AR 46–47.)

In response to the fourth hypothetical, the VE testified that a person with the following limitations could not work at all: a person with the limitations from the third hypothetical who is also limited to standing and walking two hours in an eight-hour day and lifting and carrying about ten pounds frequently or occasionally.  (AR 47.)

## III. Third Party Report

On July 29, 2012, Michelle A. Lopez, Plaintiff's friend, submitted a third party function report.  (AR 267–75.)  Ms. Lopez reported that Plaintiff's physical and mental impairments affect his everyday living.  (AR 268.)  She claims that his ailments have caused him to move more slowly when getting dressed, take more time to bathe, lose his appetite for food, and have abnormal bowel movements.  (*Id.*)  She also claims that Plaintiff is unable to move as he used to and is always in pain.  (AR 271.)  She further claims that he can only walk ten minutes before needing to rest and can pay attention for ten to fifteen minutes.  (AR 272.)

At the same time, Ms. Lopez reported that Plaintiff engages in several activities from the time he wakes up until the time he goes to bed.  (AR 267.)  For example, Plaintiff takes his eight-year-old daughter to school during school days, cares for Ms. Lopez's two puppies three to four days out of the week, prepares his and his daughter's food daily, shops for food and clothes for his daughter, takes out the trash, washes the dishes, and regularly attends church.  (AR 267–71.)

## IV. The ALJ Decision

For purposes of the Social Security Act, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In order to determine whether a claimant meets this definition, the ALJ employs a five-step sequential evaluation.  20 C.F.R. § 416.920(a); *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  If the ALJ determines that a claimant is

either disabled or not disabled at a step in the process, the ALJ does not continue on to the next step. *See* 20 C.F.R. § 416.920(a)(4); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). In brief, the ALJ considers whether the claimant is disabled by determining: (1) whether the claimant is "doing substantial gainful activity"; (2) whether the claimant has a "severe, medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity ("RFC"), the claimant can still do his or her "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." 20 C.F.R. § 416.920(a). Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC. *See* 20 C.F.R. § 416.920(e); *Bray*, 554 F.3d at 1222–23. The burden of proof is on the claimant at steps one through four but shifts to the Commissioner at step five. *Bray*, 554 F.3d at 1222.

The ALJ applied the five-step sequential framework to determine that Plaintiff is not disabled. (AR 12–13.) At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 31, 2008. (AR 13.) At step two, the ALJ found that Plaintiff has the following severe impairments: history of testicular cancer status post right orchiectomy without recurrence, cervical spine degenerative disc disease, right hand osteoarthritis and right wrist pain, and right knee degenerative changes. (*Id.*) While the ALJ found that these impairments cause more than minimal functional limitations, the ALJ found that Plaintiff's medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere. (*Id.*) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 15.) At step four, the ALJ determined that Plaintiff has the RFC to perform the full range of heavy work as defined in 20 C.F.R. § 404.1567(d) and § 416.967(d). (*Id.*) Given Plaintiff's RFC, the ALJ determined that Plaintiff can

perform his past relevant work as a newspaper deliverer and auto service supervisor, which "does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (AR 20.) Therefore, the ALJ concluded that Plaintiff has not been under a disability as defined in the Social Security Act, since December 31, 2008, through the date of its decision. (*Id.*)

## **DISCUSSION**

### I. Standard of Review of Magistrate Judge's Report and Recommendation

The district court's duties in connection with a Report from a magistrate judge are set forth in Federal Rules of Civil Procedure 72(b) and 28 U.S.C. § 636(b). The district court "may accept, reject or modify, in whole or in part, the findings and recommendations made by the magistrate." 28 U.S.C. § 636(b). The district court need not review *de novo* those portions of a Report to which neither party objects. *See Wang v. Masaitis*, 416 F.3d 992, 1000 n. 13 (9th Cir. 2005); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121–22 (9th Cir. 2003) (*en banc*). When no objections to a Report are made, the Court may assume the correctness of the magistrate judge's findings of fact and decide the motion on the applicable law. *Campbell v. U.S. Dist. Ct. for the N. Dist. of California*, 501 F.2d 196, 206 (9th Cir. 1974); *Johnson v. Nelson*, 142 F. Supp. 2d 1215, 1217 (S.D. Cal. 2001).

The Court received no objections to the Report and no requests for an extension of time to file any objections. As such, the Court assumes the correctness of the Magistrate Judge's factual findings and adopts them in full. *See Campbell*, 501 F.2d at 206.

### II. Standard of Review of the Commissioner's Decision

A court "will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as reasonable to support a conclusion." *Id.* The "evidence must be more than a mere scintilla but not necessarily a preponderance." *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). The court must consider

the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). When the evidence is susceptible to more than one rational interpretation, the court will uphold the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Alternatively, when the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely for the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that "an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006)).

## III. Analysis

Plaintiff argues that the final decision by the Commissioner is erroneous as a matter of law for three reasons: (1) the ALJ gave improper consideration to the prior final administrative decision, (2) the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Brownell's assessment that Plaintiff had become cane dependent, and (3) the ALJ failed to account for opinions concerning the ability to engage in the manipulative requirements of work activity. (ECF No. 20-1 at 10–15.)

## A. Effect of the Prior ALJ's Decision on the Presumption of Non-Disability

The Ninth Circuit has stated that "[t]he principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings." *Chavez*, 844 F.2d at 693. If an ALJ finds that the claimant is not disabled in a prior final decision, then a presumption of non-disability arises in a subsequent social security claim involving the same parties, facts, and issues. *Id.*; Acquiescence Ruling 97-4(9).[5]

---

[5] The Commissioner issues Acquiescence Rulings when circuit law conflicts with Agency policy. *See generally* Acquiescence Ruling 97-4(9) ("Statement as to How *Chavez* Differs from Social Security Policy"). Adopting *Chavez*, Acquiescence Ruling 97-4(9) "applies to cases involving a subsequent disability claim with an unadjudicated period arising under the same title of the Social Security Act as a

In order for a claimant to "overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability," a claimant "must prove 'changed circumstances' indicating a greater disability." *Chavez*, 844 F.2d at 693 (citing *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985)). Changed circumstances include an "increase in severity," "a change in the claimant's age category, as defined in the Medical-Vocational Guidelines," and new issues raised by the claimant, "such as the existence of an impairment not considered" in a prior application. *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995). Res judicata is also not to be applied "where the claimant was unrepresented by counsel at the time of the prior claim." *Id.* at 827–28. Similarly, where the ALJ found a claimant not disabled in a prior claim, findings concerning the claimant's RFC, education, and work experience are afforded some *res judicata* consideration and will not be disturbed in a subsequent disability claim, absent new and material evidence related to such findings. *Chavez*, 844 F.2d at 694.

Here, Plaintiff incorrectly states that "[t]he ALJ found the continuing presumption of non-disability rebutted by evidence of a greater functional ability than previously adjudicated by the prior ALJ." (ECF No. 20-1 at 10–11.) Contrary to Plaintiff's claims, the ALJ found that the "presumption of non-disability is *not* rebutted." (AR 16 (emphasis added).) The ALJ determined that "there are no 'changed circumstances' because there is no more adverse vocational profile than previously considered" by ALJ Carletti and "the evidence supports greater functional ability than previously determined." *Id.*

Plaintiff fails to specifically argue the existence of changed circumstances that indicate greater disability. (Dkt. No. 20-1 at 11.) However, as done in the Report (ECF No. 26 at 14–15), the Court nonetheless evaluates whether the presumption of non-disability is rebutted since the December 27, 2010 ALJ decision for the sake of thoroughness. The Court consequently finds that the Commissioner should not have

prior claim on which there has been a final administrative decision that the claimant is not disabled." *Klemm v. Colvin*, No. EDCV 13-1717-OP, 2014 WL 2611447, at *1 (C.D. Cal. June 11, 2014).

applied the presumption of non-disability because Plaintiff raised the existence of impairments not considered in his previous application.

In Plaintiff's third application, Plaintiff claimed that testicular cancer; daily migraines; injuries to his wrist, right knee, and ankle; and sinus, ear, and hearing problems limited his ability to work. (AR 234.) In contrast, in Plaintiff's fourth and most recent application, Plaintiff asserted various other physical and mental conditions limiting his ability to work, such as loss of concentration, pain in his right elbow, numbness in both his hands and arms, inability to walk due to pain, arthritis in his neck, mid and lower back pain, pain in both ankles, pain in the left side of his jaw, anxiety, and depression. (AR 113.) The different issues that Plaintiff raises in his most recent application suggest that the presumption of continuing non-disability was rebutted. *See Lester*, 81 F.3d at 827. While Defendant argues that "Plaintiff did not prove that these additional impairments established changed circumstances indicating greater disability" (Dkt. No. 22-1 at 10), all Plaintiff "has to do to preclude the application of res judicata is raise a new issue in the later proceeding." *Vasquez v. Astrue*, 572 F.3d 586, 598 n.7 (9th Cir. 2009) (finding that there would be "little point in saying that a claimant raising a new issue can escape the presumption of continuing non-disability, but only after the claimant has already proven the impairment is severe").

Further, a comparison of the current and previous ALJ decisions shows that the current ALJ clearly considered new issues that formed the basis of its decision. In 2010, ALJ Carletti rendered an unfavorable decision on Plaintiff's third claim and found that Plaintiff was not disabled as defined by the Act from October 28, 2008 through December 27, 2010. (AR 101.) ALJ Carletti determined that Plaintiff had the following severe impairments: status-post testicular cancer and depressive order. (AR 96.) In contrast, in rendering an unfavorable decision on Plaintiff's fourth claim, ALJ Benham made additional findings of severe impairments of cervical spine degenerative disc disease, right hand osteoarthritis, right wrist pain, and right knee degenerative changes.

(ECF No. 21-1 at 5–6.)  The record fails to indicate that ALJ Carletti considered these new severe impairments in forming his decision.  (*See* AR 13–20.)

Additionally, the presumption of continuing non-disability is rebutted by submission of additional medical records establishing the existence of new severe impairments.  *See Schreier v. Astrue*, No. 3:08-cv-00223-LRH (VPC), 2009 WL 4757242, at *4 (D. Nev. Dec. 10, 2009) (finding that plaintiff had rebutted the presumption of continuing nondisability by submitting additional medical records establishing the existence of a new severe impairment).  For example, according to treating physician Dr. Joseph Watson's Residual Functional Capacity Questionnaire on November 22, 2011, Plaintiff could use his right hand for grasping, turning, and twisting objects and his fingers for fine manipulation no more than five percent of an eight-hour workday.  (AR 528.)  The record also shows that on November 9, 2011, Dr. James R. McClurg conducted an orthopaedic consultation and found that Plaintiff had an "overt patellofemoral instability."  (AR 366, 374–75.)  According to Dr. McClurg's supplemental independent medical evaluation on June 8, 2012, Plaintiff "has a residual impairment in competing in the open market based on the current injury" and "[knee] surgery should be performed as soon as possible." (AR 404, 405.)

Accordingly, the Court finds that the ALJ erred in finding that the presumption of continuing non-disability was not rebutted despite the existence of impairments not previously considered.[6]

**B. ALJ's Failure to Evaluate Treating Sources' Medical Opinions**

"Regardless of its source," an ALJ "will evaluate every medical opinion" it receives.  20 C.F.R. § 404.1527(c).  "[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored.  The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or

---

[6] Plaintiff also argues that the current ALJ did not properly consider the prior ALJ's determination that the claimant has the RFC to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).  However, based on the Court's conclusion, the RFC must be reassessed on remand.

decision of disability, including opinions from medical sources about issues reserved to the Commissioner." Social Security Ruling ("SSR") 96-5 at *2–3. Generally, an ALJ must "give more weight to medical opinions from . . . treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of . . . [the] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 404.1527(c)(2). The Court affords greater weight to a treating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).

Opinions of treating physicians may only be rejected under certain circumstances. *Lester*, 81 F.3d at 830. In *Lester*, the Ninth Circuit held that an ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of a treating physician. *Id.* at 830–31. Even when contradicted by another doctor, a treating physician's opinion may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. *Id.* at 830. While the ALJ "need not discuss all evidence presented" to him, the ALJ must explain why significant and probative evidence has been rejected. *Vincent on Behalf of Vincent v. Heckler*, 739 F.3d 1393, 1394–95 (9th Cir. 1984). An ALJ errs by completely ignoring medical evidence without providing specific and legitimate reasons for doing so. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996); *Marsh v. Colvin*, 792 F.3d 1170, 1172–73 (9th Cir. 2015) ("Because a court must give 'specific and legitimate reasons' for rejecting a treating doctor's opinions, it follows even more strongly that an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them.").

Here, on its own review,[7] the Court finds that the ALJ erred in disregarding and by implication, rejecting treating physician Dr. McClurg's medical findings. *See Smolen*, 80

---

[7] *See Frith v. Celebrezze*, 333 F.2d 557, 561 (5th Cir. 1964) (reversing *sua sponte* upon observing that the hearing examiner failed to address and resolve crucial factors); *Bridges v. Gardner*, 368 F.2d 86, 90

F.3d at 1282. The current ALJ neither mentions Dr. McClurg by name nor gives any weight to his medical opinion.[8] While the ALJ gives "substantial weight to Dr. McArthur's [sic] opinions," the ALJ fails to mention Dr. McClurg's findings which contrast with Dr. MacArthur's. (AR 18.) For example, while Dr. MacArthur found no evidence of swelling, effusion, erythema, warmth or deformity in the upper and lower extremities, Dr. McClurg found through physical examination a loss of upper and lower extremity motion. (AR 403.) Additionally, Dr. MacArthur found that Plaintiff could lift and carry up to 100 pounds occasionally and 50 pounds frequently as well as sit, stoop, kneel, crouch, crawl, and balance without restrictions. (AR 481–82.) On the other hand, Dr. McClurg stated in his supplemental independent medical evaluation on June 8, 2012 that upon "provocative testing," Plaintiff exhibited "patellar subluxation positive with a highly unstable patello-femoral articulation" and was "unable to perform a full squat." (AR 402.) Dr. McClurg further stated that Plaintiff is felt to have reached the point of maximum medical improvement. (AR 404.)

Moreover, the ALJ erred in disregarding primary care and treating physician Dr. Brownell's medical opinion. On October 31, 2013, Dr. Brownell diagnosed Plaintiff with "derang post med meniscus," "depressive disorder," "abnormality of gait," and "disc dis nec/nos-cerv."[9] (AR 625.) Further, on July 12, 2013, Dr. Brownell noted that Plaintiff

---

(5th Cir. 1966) (finding that a reviewing court may not "abdicate its traditional judicial function, nor escape its duty to scrutinize the record as a whole to determine whether the conclusions reached are reasonable, and whether the hearing examiner applied correct legal standards to the evidence"); *Silva v. Colvin*, No. CA 15-301 S, 2015 WL 5023096, at *13 (D. R.I. Aug. 24, 2015) ("Court may, and should raise issues *sua sponte* when the review of the record suggests that justice requires it"); *Wilting v. Astrue*, No. 09-CV-01207-WYD, 2010 WL 3023387, at *7 (D. Colo. July 29, 2010) (when a court's duty to scrutinize the record uncovers errors, a court should raise them *sua sponte*); *Gravel v. Barnhart*, 360 F.Supp.2d 422, 453 (N.D.N.Y. 2005) (the court *sua sponte* finds that additional deficiencies in the ALJ's decision warrant remand).

[8] The current ALJ merely cites to Dr. McClurg's report, as Exhibit 4F, only to show that Plaintiff presented a cane at some doctor appointments and not at others. (AR 19.)

[9] Regarding Plaintiff's second argument in his motion, Plaintiff claims that the ALJ erred by not giving specific and legitimate reasons for rejecting the opinions of Dr. Brownell that Plaintiff had become cane dependent. (ECF No. 20-1 at 12.) Plaintiff points to Dr. Brownell's November 7, 2013 medical observation that Plaintiff is a "39yo male with falls and gait abnormality cane dependent" as establishing the need for a cane." (AR 628.) However, this statement appears to be neither a prescription nor

17

"needs shower chair #1 and metal cane."  (AR 622–23.)  It is unclear what weight Dr. Brownell's 2013 reports should hold given that her more recent report from May 1, 2014 does not list all of the diagnoses in her previous reports and states that Plaintiff rides his bike to stay in shape.  (AR 640.)  Nonetheless, the ALJ fails to mention Dr. Brownell by name or give any weight to her medical opinion.[10]  (*See* AR 13–20.)  In order for the ALJ to disregard a treating physician's opinion and not assign it controlling weight, the ALJ must provide good reasons.  *Lester*, 81 F.3d at 830.

Thus, the current ALJ erred as a matter of law in not giving treating physicians Dr. McClurg and Dr. Brownell's opinions controlling weight because the ALJ did not provide "specific and legitimate" reasons supported by substantial evidence for disregarding their opinions.  *Id.*

### C. Plaintiff's Ability to Engage in Manipulative Activity

Plaintiff claims that the ALJ made a reversible error because he failed to articulate specific and legitimate reasons for rejecting Dr. Watson's opinion that Plaintiff had limited use of his right hand.  (ECF No. 20-1 at 14–15.)  Defendant, on the other hand, argues that substantial evidence supports the ALJ's finding that Dr. Watson's assessment was inconsistent with other evidence in the record.  (ECF No. 21-1 at 18.)

Dr. Watson has treated Plaintiff since 2006.  (AR 529.)  According to Dr. Watson's Residual Capacity Questionnaire on September 22, 2011, Dr. Watson determined that Plaintiff had impairments that would have functional limitations if Plaintiff were placed in a competitive work situation.  (AR 527.)  For example, Dr. Watson found that Plaintiff could use his right hand for grasping, turning, and twisting objects and fingers for fine manipulation no more than five percent of an eight-hour workday and his right arm for reaching no more than ten percent of the day.  (AR 527–28.)

---

medical advice to use a cane.  Nonetheless, the Court finds that the ALJ erred by not giving specific and legitimate reasons for rejecting Dr. Brownell's opinions on different grounds.
[10] The current ALJ merely cites to portions of Dr. Brownell's reports, such as Exhibit 17F/9 and Exhibit 17F/26.

18

Even though Dr. Watson has served as Plaintiff's treating physician and more weight should be given to the opinion of a treating source, the ALJ provides specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Watson's opinion. First, Dr. Watson's opinion appears to be primarily based on subjective findings and contains few objective findings to support his diagnoses. (*See* AR 523–26 (Dr. Watson's medical reports noting mostly Plaintiff's own descriptions of his pain and limitations following his motor vehicle accidents)); *see Tommasetti*, 533 F.3d at 1041 (affirming the ALJ's rejection of a treating physician's assessment because it was "essentially a 'rehashing of the claimant's own statements'" with "little independent analysis or diagnosis"). The record contains one paragraph of objective findings from June 8, 2009, stating, "Bilateral wrists forearms & shoulder strains." (AR 525.)

Furthermore, substantial medical evidence in the record supports the ALJ's conclusion that Dr. Watson's assessment is not supported by the record evidence. For example, an x-ray of Plaintiff's right hand on July 6, 2010, showed that Plaintiff's bones were "normal" and that there was "no significant arthropathy or acute abnormality." (AR 344.) An x-ray of Plaintiff's right elbow on October 27, 2010, similarly yielded normal or negative findings. (AR 353.) An x-ray of Plaintiff's right wrist on October 4, 2011, showed that his right wrist was limited, but that his bony structures were intact and that there was "no evidence of acute fracture or dislocation." (AR 535.) A MRI of Plaintiff's right hand on November 3, 2011, indicated only "[mild] osteoarthritis involving the second and third carpometacarpal joints." (AR 356.)

Dr. MacArthur also found from his physical examination of Plaintiff that while the right hand "shows moderate prominence base of second and third metacarpals consistent with either a fracture subluxation or post traumatic arthritis of the CMC joints, second and third," "there is no effect on range of motion of all fingers." (AR 480.) Similarly, following Plaintiff's fall in the shower on July 10, 2013, Dr. Boore concluded that

Plaintiff could move all his extremities and had no weakness in his extremities. (AR 703, 704.)

Consequently, the ALJ provided specific and legitimate reasons supported by substantial evidence in rejecting treating physician Dr. Watson's opinion that Plaintiff had limited use of his right hand.

**D. Remand for Further Proceedings Is Appropriate**

The Court may remand the case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. In general, when the Court reverses an ALJ's decision "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). It is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (holding that "a remand for further proceedings is unnecessary if the record is fully developed and it is clear from the record that the ALJ would be required to award benefits"). Specifically, under the "credit-as-true" rule, benefits should be awarded where: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (citations omitted).

When, however, the ALJ's findings are so "insufficient" that the Court cannot determine whether the rejected testimony should be credited as true, the Court has "some flexibility" in applying the credit-as-true rule. *Connett*, 340 F.3d at 876; *see also Garrison*, 759 F.3d at 1020 (noting that *Connett* established that the credit-as-true rule

20

may not be dispositive in all cases). This flexibility should be exercised "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1021.

Here, under *Connett*, remand for further proceedings is appropriate. The ALJ did not fully and properly evaluate the treating physicians' opinions in the record. The ALJ also improperly applied the presumption of continuing nondisability. Therefore, the ALJ's determinations regarding Plaintiff's residual functional capacity, ability to perform other jobs existing in significant numbers in the national economy, and overall eligibility for disability benefits cannot be said to be supported by the record at this time. Because the issues discussed above remain in the case, remand for further administrative proceedings by the Commissioner is appropriate.

## **CONCLUSION**

Based on the foregoing review of the relevant law and the administrative record, the Court **DECLINES TO ADOPT** the Report and Recommendation, **GRANTS** Plaintiff's Motion for Summary Judgment, **DENIES** Defendant's Motion for Summary Judgment, and **REMANDS** for further administrative proceedings.

IT IS SO ORDERED.

Dated: August 9, 2017

Hon. Gonzalo P. Curiel
United States District Judge

16-cv-01079-GPC-MDD